## Morrison v. Morrison

*John R. Wingerter,* for plaintiff.
*John M. Wolford,* for defendant.

JIULIANTE, *J.,* September 27, 1983—This divorce action comes before the court on defendant's motion to dismiss the complaint for plaintiff's refusal to file an affidavit of consent to the entry of a decree of divorce pursuant to 23 Pa.C.S. §201(c). We shall grant the petition with leave to plaintiff to file a' §201(c) affidavit within 20 days.

The complaint in divorce was filed on or about March 30, 1982. Plaintiff alleged as ground for divorce §201(a)(6) (indignities) and §201(c) (irretrievable breakdown). The complaint also seeks alimony pendente lite (on which an order has been entered), equitable distribution of the marital estate, alimony, counsel fees, child support and expenses.

On May 18, 1983, defendant filed an affidavit consenting to the entry of a divorce decree. Plaintiff has not filed such an affidavit, and through counsel has informed the court that she no longer seeks a consent divorce but prefers to proceed under §201(a)(6).

Defendant, in support of his petition, cites the Allegheny County case of Rueckert v. Rueckert, 129 Pitts. Leg. J. 245 (1981). In Rueckert, the complaint included the allegation that "the marriage is irretrievably broken". Defendant filed an affidavit of consent. When plaintiff refused to file an affidavit of consent, defendant moved to dismiss the complaint. Plaintiff argued that she was seeking a divorce pursuant to §201(d) (three-year separation) rather than under §201(c) (mutual consent). The three-year separation period was not complete. The court denied defendant's motion to deem consent filed (by virtue of the affidavit appended to the complaint) and enter a decree. The court found that §201(c) requires an objective indication of both a present belief that the marriage is irretrievably broken and a present intention to seek a divorce, which requirement can only be satisfied by the affidavit filed pursuant to Pa.R.C.P. 1920.42(b).

The court found, however, that to allow the action to proceed on plaintiff's terms would violate §102(a)(6) "to effectuate economic justice . . . " by allowing her to collect alimony pendente lite (which is awarded without regard to marital misconduct or entitlement, Jeffrey v. Jeffrey, 228 Pa. Super. 64, 296 A.2d 873 (1972)) for the duration of the three-year waiting period. Thus, the court ruled that plaintiff's continued failure to file the §201(c) affidavit would result in dismissal of the case.

In the case at bar, the conflict is not between sections 201(c) and (d), but between §201(c) and a traditional "fault-based" ground under §201(a)(6) (indignities). Plaintiff argues that she may withdraw the averment that "the marriage is irretrievably broken" and force the matter to a hearing solely on the ground of indignities. We disagree with this assertion.

Throughout plaintiff's argument on this motion has run a common thread: that plaintiff is somehow "entitled" to a decree of divorce exclusively on her terms. First, the argument is raised that a finding of indignities is necessary to secure an adequate award of alimony. This court is well aware that marital misconduct is one of the 14 listed factors to consider in determining an award of alimony under §201(b). However, the grounds for divorce are not a factor listed, nor would it be of much relevance to alimony. Plaintiff will certainly be entitled to introduce evidence of marital misconduct, if she has any, at a hearing on alimony (to the extent the master can be persuaded of its relevance). Thus, entry of a decree on no-fault grounds will not prejudice any rights plaintiff may have to alimony.

Next, plaintiff argues that she is "entitled" to a decree based on indignities so that she may show it to the world and "prove" that the dissolution of the marriage was not her fault. This assertion completely ignores one of the stated purposes of the Divorce Code:

"[I]t is the policy of the Commonwealth of Pennsylvania to: . . . (3) give primary consideration to the welfare of the family rather than 'the vindication of private rights or the punishment of matrimonial wrongs." Code, §102(a)(3). To allow plaintiff to pursue this expensive and time-consuming remedy for the purpose stated above would be tantamount to allowing plaintiff to invoke the power of this court to vindicate a private right.

The tension created by the alternate grounds for divorce was addressed in a similar context in Barbara B.S. v. S. Allen S., (Allegheny Court of Common Pleas, no. 876 October term, 1977, per Kaplan, J., March 5, 1982). In that case, defendant moved for the appointment of a master to hear his counter-

claim on the grounds of indignities. The parties had been separated for almost three years. The court declined to appoint a master, stating that as a matter of policy, a divorce on no-fault grounds was preferable to undergoing the trauma and expenses of a fault-based proceeding:

"It is clear that in following the statute's prescription to deal with 'the realities of matrimonial experience' the courts of this Commonwealth can no longer become embroiled in the offensively unnecessary finger-pointing castigations typical of divorce cases under prior law. The geometric increase in divorce litigation which our society has experienced calls for a heightened perception of the sociological implications of a family's dissolution. That segment of the legal profession dealing with matrimonial problems has expanded to match the case load, bringing with numbers a new respectability to domestic relations practice and focusing their fresh perspectives and ideals on bridging domestic rifts wherever possible. As that sociological awareness comes to the fore the era of the 'hired gun', that attorney whose professional skills are squandered on the retributive designs of his client, is hopefully yielding to an era of the attorney who can temper his subjective advocacy with a conciliatory and mediative tone which should ultimately yield the most desirable results for all concerned. Particularly since the advent of the new Divorce Code, this court has consistently sought to obviate the vendetta like atmosphere which frequently permeates these matters. Clearly, it was not the intent of the new code to create new causes of action without imparting to them the potential for compromise and conciliation. The attitude which should thus develop among counsel and clients alike can reasonably be termed to be an ideal

of Pennsylvania's new Divorce Code." S. v. S., supra, slip op. at 4-5.

Plaintiff is attempting to thwart the application of Rueckert v. Rueckert, supra, to this case by withdrawing her allegation of irretrievable breakdown. Plaintiff pleads that she, as the innocent and injured spouse, has been offered such indignities by her spouse as to render her condition intolerable and life burdensome. 23 P.S. §201(a) (6). Furthermore, she says, despite this, the marriage is not irretrievably broken. How can this be? If the marriage is not rendered irretrievably broken by the infliction of indignities, a fortiori, the indignities are not such as would justify granting a divorce, and the complaint should be dismissed.

We cannot allow plaintiff to circumvent the policy and intent of the Divorce Code by this procedural maneuver. We therefore conclude that an allegation pursuant to §201(a)(6) is equivalent to an allegation under §201(c). Though more specific, the §201(a)(6) allegation certainly supports a conclusion that the marriage is irretrievably broken.

The wisdom of retaining the fault-based grounds for divorce has been questioned. See Joint State Government Commission, Report, June 1961, "Proposed Divorce Code for Pennsylvania" at pp. 94 & 98 and Rounick, Pennsylvania Matrimonial Practice, §5:3. Indeed, 17 of our sister states have eliminated fault grounds for divorce altogether, see Freed and Foster, "Divorce in the Fifty States: An Overview as of August 1, 1979" 5 Fam. L. Rep. 4027 (1979).

Perhaps the retention of the fault-based grounds has some merit. As Judge Kaplan points out in S. v. S., supra, an uncontested divorce on indignities gounds may be concluded in less that the 90-day statutory waiting period under §201(c); a contested

fault divorce may be necessary if defendant refuses to enter an affidavit of consent, and plaintiff does not care to wait until the conclusion of the three-year separation period under §201(d). However, proceeding on §201(a)(6) grounds at this stage of this proceeding would serve none of these purposes.

If, indeed, plaintiff's purpose in this action is to terminate her marriage to defendant, as stated in her prayer for relief, and if, indeed, her condition is intolerable and life burdensome, the court finds no reason consonant with the purposes of the Divorce Code why she should not consent to the termination of this marriage. If, on the other hand, the marriage is not irretrievably broken, then there is no reason to continue these proceedings. Therefore, we enter the following

## ORDER

And now, this September 27, 1983, upon defendant's petition to compel plaintiff to file consent for divorce within 20 days or dismissal of the complaint for divorce and all pending proceedings, after argument and submission of briefs, it is hereby ordered, adjudged and decreed that plaintiff shall, within 20 days, submit an affidavit of consent to the entry of a decree of divorce, and in default thereof, the above captioned case shall be dismissed and all orders previously entered herein shall be null and void and of no force or effect.